IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE MONEY CENTERS OF AMERICA, *et al.*, | : : : | Chapter 11<br>Bankr. No. 14-10603 (CSS)<br>(Jointly Administered) |
| Debtors. | : | |

| | | |
|---|---|---|
| CHRISTOPHER M. WOLFINGTON, | : : | Chapter 7<br>Adv. Proc. No. 16-51030 (CSS) |
| Appellant, | : | |
| v. | : : | |
| ANDREW R. VARA, Acting United States Trustee, | : : | Civ. No. 19-1392-CFC |
| | : : | |
| Appellee. | : | |

Christopher M. Wolfington, Philadelphia, PA.

    *Pro Se Appellant*

Andrew R. Vara, T. Patrick Tinker, Robert J. Schneider, Jr., Department of Justice, Office of the United States Trustee, Wilmington, Delaware; Ramona D. Elliot, P. Matthew Sutko, Department of Justice, Executive Office for U.S. Trustees, Washington, D.C.

    *Counsel for Appellee*

## **MEMORANDUM OPINION**

November 16, 2020
Wilmington, Delaware

CONNOLLY, UNITED STATES DISTRICT JUDGE

## I.  INTRODUCTION

*Pro se* appellant Christopher M. Wolfington ("Appellant") has appealed the Judgment entered by the United States Bankruptcy Court for the District of Delaware ("Bankruptcy Court") on July 2, 2019 (Adv. D.I. 139) which denied Appellant discharge of his debts in his Chapter 7 case pursuant to 11 U.S.C. §§ 727(a)(2) and (a)(4).  The Judgment was accompanied by the Bankruptcy Court's Findings of Fact and Conclusions of Law (Adv. D.I. 138), issued pursuant to Federal Rule of Bankruptcy Procedure 7052.  Neither party disputes that the Bankruptcy Court had the judicial power to enter the Judgment as a final order. For the reasons set forth herein, the Court affirms the Judgment.

## II.  BACKGROUND

### A.  MCA's Chapter 11 Case

Prior to the bankruptcy, Money Centers of America, Inc. ("MCA") and its subsidiaries generally entered into contracts with casinos to provide cash-access services.  Litigation ensued in multiple courts, including litigation by Native American tribes in Minnesota and Wisconsin, alleging that MCA did not repay funds advanced by the casinos.  This litigation resulted in millions of dollars in judgments against MCA in September and December of 2013.  MCA filed for Chapter 11 protection in the Bankruptcy Court on March 21, 2014.

Appellant was the Chairman, CEO, and largest stockholder of MCA. (A273, A277).[1] MCA's statement of financial affairs, which was signed by Appellant under penalty of perjury, disclosed that during the portion of 2014 leading up to the filing of MCA's Chapter 11 petition, MCA paid Appellant $75,000. (A265-66, A275).

Approximately one month after MCA filed its bankruptcy case, a Chapter 11 Trustee was appointed under § 1104(a) of the Bankruptcy Code, replacing Appellant as management of MCA. (A79). At the time of the Chapter 11 Trustee's appointment, the Bankruptcy Court found (i) "there was a lack of credibility of [MCA's] witnesses"; (ii) "the testimony [of MCA's witnesses] was inconsistent" and "intentionally vague"; and (iii) "Chris Wolfington I found to be the least reliable." (A335, Tr. at 91:8-12.3).

### B.   Appellant's Chapter 7 Case

Appellant, represented by counsel, filed his individual Chapter 7 petition on September 16, 2015 ("Petition Date") in the Eastern District of Pennsylvania, where his Chapter 7 case remained pending at the time of the Judgment. (A98). Appellant's schedules of assets and liabilities did not disclose ownership of any

---

[1] The appendix filed in support of the UST's answering brief (D.I. 9) is cited herein as "A__." The docket of the adversary proceeding, *Vara v. Wolfington*, Adv. No. 16-51030 (CSS) (Bankr. D. Del.), is cited herein as "Adv. D.I. __," and the docket of the Chapter 11 case, *In re Money Centers of America, Inc., et al.*, No. 14-10603 (CSS) (Bankr. D. Del.), is cited herein as "Bankr. D.I. __."

website domain names. (A106-A107, A123). Appellant's statement of financial affairs disclosed that during 2014, Appellant received $60,000 in gross income from employment or operation of a business, $50,000 from consulting, and $75,000 from a retirement account withdrawal. (A125-26, A133).

At the meeting of creditors held under § 341(a) in his individual Chapter 7 case, Appellant testified regarding two websites, finpay.net and chriswolfington.com. (A311, Tr. at 131:9-24; A313-A314, Tr. at 56:13–57:19); *see also* 11 U.S.C. § 343 (debtor must testify under oath at meeting of creditors). Appellant acknowledged he was the "registrant" of finpay.net but denied owning that domain name. (A311, Tr. at 131:12-24). Appellant acknowledged that he owned the domain name chriswolfington.com, which he described as "a website that has information about [him]." (A314, Tr. at 57:11-19; *see also* A316).

After the meeting of creditors, Appellant filed an amended statement of financial affairs disclosing that his 2014 employment income was $75,000 not $60,000. (A135, A143).

## C. Objection to Discharge

On January 4, 2016, the United States Trustee ("UST") filed an adversary proceeding against Appellant in his Chapter 7 case seeking a denial of discharge of Appellant's debts. The complaint alleged that Appellant had violated §§ 727(a)(2) (based on failure to disclose assets consisting of website domain names) and 727(a)(4) (based on false disclosure of Appellant's 2014 income from MCA).

3

(A41-A48).  The adversary proceeding was ultimately transferred to the Delaware

bankruptcy judge assigned to MCA's Chapter 11 case.  (A24; Adv. D.I. 39).

Proceeding *pro se*, Appellant filed a summary judgment motion in which he

sought to dismiss the complaint.  (A63-A76).  The UST filed a response including

exhibits showing Appellant had signed MCA's statement of financial affairs under

penalty of perjury disclosing that MCA had paid him $75,000 in 2014, and that at

the meeting of creditors in his own Chapter 7 case Appellant had acknowledged

being the registrant of finpay.net and the owner of chriswolfington.com.  (A266,

A311, Tr. at 131:12-124 & A314, Tr. at 57:11-19).  The UST also attached a

transcript from the hearing at which the Bankruptcy Court appointed the Chapter

11 Trustee in MCA's Chapter 11 case and found that Appellant was not a reliable

witness.  (A335, Tr. at 91:8-12).

In an order entered October 24, 2018, the Bankruptcy Court granted

summary judgment in favor of Appellant as to some counts.  (A352-A354).  The

Bankruptcy Court found that the uncontested facts included: (i) that Appellant was

the registered owner of finpay.net and chriswolfington.com, yet failed to disclose

his interest in those domain names (A354); and (ii) that the Bankruptcy Court had

previously found Appellant to be an unreliable witness when it ordered a Chapter

11 Trustee to be appointed in MCA's case (*id.*)

On March 6, 2019, the parties filed their pretrial briefs.  (Adv. D.I. 134,

135).  The UST requested that the Bankruptcy Court take judicial notice of certain

opinions and judgments issued in other litigation against MCA and Appellant. (*See* Adv. D.I. 134 at ¶ 9).[2]  Appellant did not take issue with the Trustee's judicial notice request with respect to those documents.  (*See* A666).

On March 11, 2019, the Bankruptcy Court held a trial, at which Appellant, appearing *pro se*, produced documentary evidence, produced and questioned two witnesses, and personally testified at length.  (A521-A663 (transcript of March 11, 2019 trial)).  Regarding ownership of the domain name finpay.net, witness Edmund Moore, Jr., a board member and investor in FinPay, LLC, testified that his company, Clutch Holdings, had procured the domain name finpay.net and "transferred the domain management to FinPay, LLC."  (A538, Tr. at 18:9-19; A549-A551, Tr. at 29:25–31:8).  Lauren Anderson, Vice President of Operations at FinPay, LLC, also testified that FinPay, LLC owned finpay.net.  (A584-A585, Tr. at 64:19–65:10).  Additionally, Appellant testified that he did not own finpay.net at

---

[2] On September 9, 2013, the Ho-Chunk Nation obtained a stipulated judgment against MCA in the amount of $4,780,000 in an action pending before the Ho-Chunk Nation Trial Court entitled *Ho-Chunk Nation v. Money Centers of America, Inc. and MCA of Wisconsin*, CV 10-54.  (*See* Adv. D.I. 134 at Exh. Y).  On December 2, 2013, the Corporate Commission of the Mille Lacs Band of Ojibwe Indians obtained a judgment against MCA in the amount of $5,623,690.83 in an action pending in the United States District Court for the District of Minnesota, Case No. 12-cv-01015.  (*See* Adv. D.I. 134 at Exh. V).  Appellant is a named defendant in that case.  By opinion and order dated February 18, 2014, the Minnesota District Court denied a summary judgment motion brought by Appellant.  (*See* Adv. D.I. 134 at Exh. W).  Further prosecution of the case was stayed first by the MCA Chapter 11 case and then by Appellant's Chapter 7 case.

the time of his bankruptcy filing, but only "manage[d] the finpay.net domain name." (A594, Tr. at 74:11-13, A603, Tr. at 83:4).

Regarding ownership of the domain name chriswolfington.com, Appellant testified that he owned chriswolfington.com, but he described it as a "social media page" that "just contains pictures and information about" him, which he decided was not "appropriate" to include on his schedule of assets. (A628-A629, Tr. at 108:1–109:2).

Regarding the MCA income disclosure, Appellant testified that he calculated the 2014 MCA income disclosed in his initial statement of financial affairs by multiplying the $20,000 monthly salary he thought he received times three. (A623, Tr. at 103:8-10). He further testified that the $15,000 he did not disclose was attributable either to an extra pay period or loan interest payments made to him by MCA. (*Id.*, Tr. at 103:13-18). Although he testified that he could not determine the exact amount he received in 2014 due to his inability to access MCA's records, he also testified that MCA's payments to him were made by direct deposit. (*Id.*, Tr. at 103:6-7, A625, Tr. at 105:2-3).

### D.   Judgment and Appeal

On July 2, 2019, the Bankruptcy Court issued its Findings of Fact and Conclusions of Law along with the Judgment denying Appellant's discharge. (A664-A688). While the Bankruptcy Court ruled in Appellant's favor as to several of the UST's allegations, the Bankruptcy Court exercised its discretion to deny

discharge pursuant to §§ 727(a)(2) and (a)(4) based on other allegations. The
Bankruptcy Court ruled that Appellant's omission of his ownership interests in two
web addresses violated 11 U.S.C. §§ 727(a)(2) and 727(a)(4) and that his
misrepresentation of his 2014 income from MCA violated 11 U.S.C. § 727(a)(4).

Appellant filed a timely motion to extend the time to appeal under 28 U.S.C.
§ 158(c)(2) and Bankruptcy Rule 8002(a) and (d), which the Bankruptcy Court
granted on July 23, 2019. On July 26, 2019, Appellant filed a timely notice of
appeal. (D.I. 1). The appeal is fully briefed. (D.I. 8, 9, 12). The Court did not
hear oral argument because the facts and legal arguments are adequately presented
in the briefs and record, and the Court's decisional process would not be aided by
oral argument.

## III.   JURISDICTION AND STANDARD OF REVIEW

The Bankruptcy Court's Judgment denying Appellant a discharge of his
debts under 11 U.S.C. § 727(a)(2) and (a)(4) was final and immediately
appealable. *See Serio v. DiLoreto (In re DiLoreto),* 266 F. App'x 140, 142 (3d Cir.
2008). This Court has jurisdiction over the appeal under 28 U.S.C. § 158.

The Bankruptcy Court's legal conclusions are reviewed de novo, its factual
findings for clear error, and its exercises of discretion for abuse. *See In re
Michael,* 699 F.3d 305, 308 n.2 (3d Cir. 2012). A factual finding is clearly
erroneous only if it "either is completely devoid of minimum evidentiary support
displaying some hue of credibility or bears no rational relationship to the

supportive evidentiary data." *Fellheimer, Eichen & Braverman, P.C. v. Charter Techs., Inc.*, 57 F.3d 1215, 1223 (3d Cir. 1995) (internal quotation marks omitted). When there are multiple ways to view the evidence, "the [bankruptcy court's] choice between them cannot be clearly erroneous." *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985).

The denial of a debtor's discharge under 11 U.S.C. § 727(a) is reviewed for abuse of discretion. *See Meridian Bank v. Alten*, 958 F.2d 1226, 1230 (3d Cir. 1992) (reviewing denial of discharge for abuse of discretion). A court abuses its discretion when it "bases its opinion on a clearly erroneous finding of fact, an erroneous legal conclusion, or an improper application of law to fact*." In re Prosser*, 777 F.3d 154, 161 (3d Cir. 2015) (internal quotation omitted).

## IV.   ANALYSIS

The filing of a Chapter 7 petition creates a bankruptcy estate, which includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). A debtor in bankruptcy must file a schedule of assets and liabilities in which the debtor must identify its assets and debts. 11 U.S.C. § 521(a)(1)(B)(i); Fed. R. Bankr. P. 1007(b)(1)(A). Debtors also must file a statement of financial affairs in which they must disclose all income, whether from employment or otherwise, received during the two years prior to the year the petition was filed. 11 U.S.C. § 521(a)(1)(B)(iii); Fed. R. Bankr. P. 1007(b)(1)(D). These schedules and statements must be signed under penalty of perjury. Fed. R.

8

Bankr. P. 1008; *see also* 28 U.S.C. § 1746. A debtor must also testify under oath at a meeting of creditors as to "the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge." 11 U.S.C. §§ 341(a), 343; Fed R. Bankr. P. 2004(b). A debtor has an obligation to disclose all assets even those assets which a debtor subjectively believes to have little to no value. *See Miqueo-Elian v. Elian (In re Elian)*, 2014 WL 276 295 (Bankr. D.N.J. July 1, 2014), *aff'd* 2015 WL 5164796 (D.N.J. Sept. 2, 2015), *aff'd* 659 Fed. App'x 104 (3d Cir. 2016).

Third Circuit authority holds that § 727 should be "construed liberally in favor of the debtor" and that a total bar to discharge is "an extreme penalty." *Rosen v. Beezner*, 996 F.2d 1527, 1534 (3d Cir. 1994). That said, a discharge is allowed under 11 U.S.C. § 727(a) only to an "honest but unfortunate debtor." *See Grogan v. Garner*, 498 U.S. at 287. As a result, the Bankruptcy Code provides numerous grounds for denying a discharge to dishonest debtors. *See, e.g., Farouki v. Emirates Bank Int'l, Ltd.*, 14 F.3d 244, 249 (4th Cir. 1994) (stating that "certain provisions of § 727[a] prohibit discharge for those who play fast and loose with their assets or with the reality of their affairs"). Only one ground need be established to deny discharge. *Id.* at 250 (explaining that a "party objecting to discharge need prove only one of the grounds for non-dischargeability under § 727(a) because the provisions of § 727(a) are phrased in the disjunctive").

Because the UST presented a prima facie case as to each count, the burden of proving that the discharge should not be denied as to each count shifted to Appellant. *See Meridian Bank*, 985 F.2d at 1232 ("At trial, the party objecting to a discharge has the burden of proving the objection. But once that party meets the initial burden by producing evidence establishing the basis for his objection, the burden shifts to the debtor[.]") (internal quotation omitted); *see also In re Steiker*, 380 F.2d 765, 767 (3d Cir. 1967) (identifying the "well-settled principle[ ]" that in discharge objections "the burden of proof is on the objecting [party] to make out a prima facie case, but once he has done so the burden shifts to the bankrupt") (internal quotation omitted).

Here, the Bankruptcy Court denied Appellant a discharge of his debts on two separate and independent grounds. The Bankruptcy Court denied Appellant's discharge under § 727(a)(2) of the Bankruptcy Code based on findings that Appellant had concealed his ownership of the finpay.net and chriswolfington.com domain names — which constitute property of the bankruptcy estate — after filing his Chapter 7 petition with the intent to hinder, delay, or defraud creditors and the Chapter 7 trustee. Alternatively, the Bankruptcy Court denied Appellant's discharge under § 727(a)(4) of the Bankruptcy Code based on findings that Appellant had knowingly and fraudulently made false oaths in or in connection with his Chapter 7 case with respect to the domain names and his 2014 income from MCA.

On appeal, Appellant argues that the Bankruptcy Court erred in applying the preponderance of evidence standard in denying the discharge and should have applied a clear and convincing standard of proof. (D.I. 8 at 29-31). Appellant cites no authority in support of his argument. (*Id.* at 12, 15, 26, 27 & 28). As the UST correctly points out, the Third Circuit has acknowledged that the "preponderance of the evidence" is the correct standard of proof under § 727(a) of the Bankruptcy Code. *See, e.g., Cho v. Park (In re Park)*, 682 F. App'x 88, 92 (3d Cir. 2017); *Serio v. DiLoreto (In re DiLoreto)*, 266 F. App'x 140, 144 (3d Cir. 2008); *Georges v. Georges (In re Georges)*, 138 F. App'x 471, 472 (3d Cir. 2005).[3] The Court therefore rejects Appellant's argument on this point.

Appellant further argues that the Bankruptcy Court erred in denying his discharge based on his failure to list chriswolfington.com as an asset (D.I. 8 at 14-17); his failure to list his interest in finpay.net as an asset (*see id.* at 17-19); and the discrepancy in prepetition income reported on his schedules and the transfers that MCA reported on its schedules (*see id.* at 17-19). Appellant further argues that the UST improperly used extrinsic evidence to attack Appellant's credibility and that the Bankruptcy Court exhibited improper bias against the Appellant. (*See id.* at

---

[3] The Third Circuit's holding is consistent with the holdings of other circuit courts of appeals. *See, e.g., Barclays/Am. Bus. Credit, Inc. v. Adams (In re Adams)*, 31 F.3d 389, 394 (6th Cir. 1994); *Farouki*, 14 F.3d at 249 n.17; *Beaubouef v. Beaubouef (In re Beaubouef)*, 966 F.2d 174, 178 (5th Cir. 1992); *First Nat'l Bank of Gordon v. Serafini (In re Serafini)*, 938 F.2d 1156, 1157 (10th Cir. 1991).

19-24).  Finally, Appellant argues that the Bankruptcy Court erred in limiting Moore's testimony.  (*Id.* at 28-30).  The Court addresses each argument in turn.

## A.    Denial of Discharge Pursuant to § 727(a)(2)

Under § 727(a)(2)(B) of the Bankruptcy Code, Appellant cannot receive a discharge of his debts if he concealed assets after filing his Chapter 7 case with the intent to hinder, delay, or defraud creditors or the case trustee.  11 U.S.C. § 727(a)(2)(B).  To make a prima facie case under § 727(a)(2)(B), the UST had to show that Appellant (i) concealed (ii) an asset of the bankruptcy estate (iii) after his bankruptcy petition was filed (iv) with the intent to hinder, delay, or defraud creditors or the Chapter 7 case trustee.  On appeal, Appellant mainly disputes that the UST established these elements or that the Bankruptcy Court provided any rationale for determining that Appellant acted with requisite the intent.

The Bankruptcy Court did nor err in concluding that Appellant concealed the domain names by not including them on his schedule of assets.  "Debtors have an absolute duty to report whatever interests they hold in property, even if they believe their assets are worthless or are unavailable to the bankruptcy estate."  *In re Yonikus*, 974 F.2d 901, 904 (7th Cir. 1992).  Appellant's arguments that the Bankruptcy Court should have excused his failure to disclose finpay.net because he thought "it could not be sold even if [he] had some type of interest" (D.I. 8 at 19) and his failure to disclose chriswolfington.com because he thought it was "a valueless asset" (*id.* at 17) are meritless here.  The Third Circuit has defined

"concealment" as not only "to secrete or hide away" but also "to prevent the discovery of or *to withhold knowledge of*" an estate asset. *In re Von Kiel*, 550 F. App'x 105, 108 (3d Cir. 2013) (internal quotations omitted) (emphasis added). Appellant concealed his interests in the domain names when he failed to include them on his schedule of assets. *See Gronlund v. Anderson (In re Gronlund)*, 656 F. App'x 851, 852 (9th Cir. 2016) (affirming denial of discharge under § 727(a)(2)(B) because the debtor's "failure to specifically list the property interest in his schedules . . . amounted to acts of concealment").

Second, the Bankruptcy Court did not err in determining that the domain names are assets of Appellant's bankruptcy estate. Property of the bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." *See* 11 U.S.C. § 541(a)(1). A domain name of which the debtor is the registered owner is "a species of property" of the debtor's bankruptcy estate, "[a]nd as such, it must be reported on a debtor's bankruptcy schedules." *Panda Herbal Int'l, Inc. v. Luby (In re Luby)*, 438 B.R. 817, 829-30 (Bankr. E.D. Pa. 2010); *see also Partners for Health & Home, L.P. v. Seung Wee Yang*, 488 B.R. 109, 119 (C.D. Cal. 2012) ("[D]omain names are assets which a debtor must list on his asset schedules."); *King Louie Mining, LLC v. Comu (In re Comu)*, 2014 WL 3339593, at *11 n.208 (Bankr. N.D. Tex. July 8, 2014) ("Domain names are assets that must be disclosed in bankruptcy.").

It is undisputed that chriswolfington.com is property of the bankruptcy estate because Appellant admitted to owning that domain name. (A314, Tr. at 57:11-19; A628, Tr. at 108:20-21). Although Appellant argues that the site is "social media" similar to Facebook and LinkedIn (D.I. 8 at 14-17), the Bankruptcy Court determined that it is distinguishable because, while a domain name — which he controls and can buy and sell, or use however he wants — is Appellant's property, a social media page is not. *See In re CTLI, LLC*, 528 B.R. 359, 367 (Bankr. S.D. Tex. 2015) (holding that an individual's social media page is not property of the individual's bankruptcy estate). As a result, the chriswolfington.com domain name is property of Appellant's bankruptcy estate that he was required to disclose.

Although Appellant disputed owning finpay.net (A594, Tr. at 74:11-14), Appellant did not deny that he was its the "registrant," (A311, Tr. at 131:12-24), which means he was finpay.net's registered owner. *See Jubber v. Search Mkt. Direct, Inc. (In re Paige)*, 413 B.R. 882, 891 (Bankr. D. Utah 2009), *aff'd sub nom., Search Mkt. Direct, Inc. v. Jubber (In re Paige)*, 443 B.R. 878, 898 (D. Utah 2011), *aff'd in part, rev'd in part on other grounds*, 685 F.3d 1160 (10th Cir. 2012) ("Paige remained the registered owner of the Domain Name (also known as the registrant)[.]"). As a result, the finpay.net domain name is also property of Appellant's estate that had to be disclosed on his schedule of assets.

Third, the failure to disclose assets on a debtor's schedules constitutes the postpetition concealment of estate assets for purposes of section 727(a)(2)(B). *See,*

14

*e.g., Gronlund*, 656 F. App'x  852; *Montedonico v. Beckham (In re Beckham)*, 2009 WL 1726526, at *8 (B.A.P. 6th Cir. June 19, 2009).  More specifically, the failure to disclose internet domain names registered to a debtor constitutes postpetition concealment for purposes of § 727(a)(2)(B).  *Luby*, 438 B.R. at 829-30.  As a result, Appellant engaged in postpetition concealment of finpay.net and chriswolfington.com when he failed to disclose them on his schedules.

Fourth, the requisite intent under § 727(a)(2)(B) need only be to "hinder" or "delay" creditors and the Chapter 7 trustee by keeping them from learning of the domain names' existence, and not necessarily to "defraud" them.  *See Retz v. Samson (In re Retz),* 606 F.3d 1189, 1200 (9th Cir. 2010).  The intent required for § 727(a)(2)(B) is determined from "surrounding circumstantial evidence," so it "must be gleaned from inferences drawn from a course of conduct."  *Rosen v. Bezner*, 996 F.2d 1527, 1534 (3d Cir. 1993).  "[A] debtor's pattern of concealment and nondisclosure, along with his reckless disregard for the truth, can support a finding that he acted with [the requisite] intent" under section 727(a)(2)(B).  *In re Rahmi*, 535 B.R. 655, 661 (Bankr. N.D. W. Va. 2015).

Here, the Bankruptcy Court found that Appellant failed to disclose two domain names.  The Bankruptcy Court further noted that Appellant did not give a straight answer about finpay.net during his meeting of creditors.  (A618, Tr. at 98:17-22 ("You didn't answer the question.  You said something non-responsive which was you managed it.  You didn't actually deny ownership.  You didn't

admit ownership, but you said you managed it. You didn't actually answer the question that he asked you."). The Bankruptcy Court also made these findings in the wake of its previous findings in the MCA case that the witness testimony presented by Appellant evinced "a lack of credibility" and "was inconsistent" and "intentionally vague" — and that Appellant was "the least reliable" witness of all. (A335, Tr. at 91:8-12).

Having met the initial burden by producing evidence establishing the basis for his objection, the burden shifted to Appellant to rebut UST's evidence. Appellant presented witness testimony that he did not own finpay.net. (A538, Tr. at 18:9-19; A549-A551, Tr. at 29:25–31:8; A584-A585, Tr. at 64:19–65:10; A594, Tr. at 74:11-13; A603, Tr. at 83:4). Appellant also testified that he did not think it was appropriate to include chriswolfington.com on his schedules. (A628- A629, Tr. at 108:1–109:2). Appellant produced no other evidence as to the value of either domain name. *See Schott v. McLear (In re Larry Koenig & Assocs., LLC)*, 2004 WL 3244582, at *6 (Bankr. M.D. La. Mar. 31, 2004) ("The right to use a domain name can have significant value, in much the same way that a unique telephone number can for a business."). As a result, the Court finds no basis for Appellant's assertion that he lacked the requisite intent because the domain names were not marketable. (*See* D.I. 8 at 15-19).

The Bankruptcy Court found, based on all of the documents and testimony presented as a whole, that Appellant possessed the requisite intent when he

concealed the domain names by failing to disclose them on his schedules.

Although Appellant disagrees with that finding, it was not clearly erroneous.

*Anderson v. City of Bessemer City*, 470 U.S. at 575-76 (holding that a factual

finding based on the credit given witness testimony by the trial court "can virtually

never be clear error").

Appellant has failed to show that the Bankruptcy Court based its decision on

a clearly erroneous finding of fact, an erroneous legal conclusion, or an improper

application of law to fact. The UST made a prima facie showing that Appellant

concealed estate assets post-petition with the intent to hinder, delay, or defraud

creditors and the Chapter 7 case trustee, which Appellant did not successfully

rebut. Therefore, the Court finds not basis to conclude that the Bankruptcy Court

abused its discretion or otherwise erred in denying Appellant's discharge under §

727(a)(2)(B), and the Judgment may be affirmed on that basis alone.

### B.    Denial of Discharge Pursuant to § 727(a)(4)

The Bankruptcy Court determined that Appellant violated § 727(a)(4) based

on his (i) "omission of his ownership interests in two web addresses" and (ii)

"misrepresentation of his 2014 MCA income." (A688). Section 727(a)(4)

"imposes affirmative duties upon a debtor to disclose the existence of all assets and

his ownership interest in property and to answer all questions fully and honestly for

the benefit of his or her creditors and other parties with an interest in the proper

administration of the debtor's bankruptcy case who are entitled to a truthful

17

statement of the debtor's financial condition." *In re Henderson*, 134 B.R. 147, 159 (Bankr. E.D. Pa. 1991) (internal quotations and citation omitted).  Appellant should receive a discharge of his debts unless he knowingly and fraudulently made a false oath in or in connection with the bankruptcy case.  11 U.S.C. § 727(a)(4)(A).  "According to the plain language of § 727(a)(4)(A), all that is required for a denial of discharge is a single false oath or account."  *See Smith v. Grondin (In re Grondin)*, 232 B.R. 274, 277 (B.A.P. 1st Cir. 1994) (internal quotation omitted).

The parties appear to agree that to make a prima facie case, the UST had to show that: (i) Appellant made one or more false oaths in or in connection with his bankruptcy case; (ii) the false oaths were material; (iii) the false oaths were knowingly made; and (iv) the false oaths were made with fraudulent intent.  (*See* D.I. 8 at 11-12 (citing *In re Kisberg*, 150 B.R. 354, 356 (Bankr. M.D. Pa. 1992); *Henderson*, 134 B.R. at 159; *In re Ward*, 92 B.R. 644, 647 (Bankr. W.D. Pa. 1988); *see* D.I. 9 at 25 (citing *Retz*, 606 F.3d at 1197)).

The UST argues that there can be no dispute that Appellant made several false oaths in or in connection with this bankruptcy case because his schedules and initial statement of financial affairs did not disclose the finpay.net and chriswolfington.com domain names or his accurate 2014 MCA income.  *See Elian*, 659 F. App'x at 106 (finding that failure to disclose assets in schedules was a false oath); *Retz*, 606 F.3d at 1196 ("A false statement or an omission in the debtor's

18

bankruptcy schedules or statement of financial affairs can constitute a false oath.")
(internal quotation omitted).  Appellant's contentions on appeal center on the latter
three elements.

"Whether a debtor has made a false oath within the meaning of section
727(a)(4)(A) is a question of fact." *Williamson v. Fireman's Fund Insurance Co.*,
828 F.2d 249, 251 (4th Cir. 1987); *In re Roe*, 146 F.2d 266, 267 (3d Cir. 1944).
Accordingly, the Bankruptcy Court's findings with respect to this issue may not be
set aside unless clearly erroneous. *See Williamson*, 828 F.2d at 251; *Meridian
Bank*, 1991 WL 333927 at *3.

### 1.    Materiality

Appellant argues that the UST did not establish that Appellant's failure to
disclose the websites and the $15,000 discrepancy in MCA income were material,
and takes issue with the Bankruptcy Court's observation that Appellant should
have recalled the $15,000 transfer because $15,000 was "7.5% of [Appellant's
total income, 20% of his employment or business operations income, and 12% of
all income less 401(k) withdrawals" (A678).  (*See* D.I. 8 at 11-12, 20-22).
Appellant argues that the Bankruptcy Court's estimation of his yearly income was
incorrect, and that the $15,000 in income represents only "two tenths of one
percent of the $7,214,628,20, which is the amount of debts that [Appellant] had
reported." (D.I. 8 at 21).  Appellant argues materiality is not met here as his
personal website its valueless, his interest in finpey.net disputed, and the $15,000

discrepancy, while not an insignificant sum, "is less significant to an executive earning several hundred thousands of dollars a year with a debt load in excess of seven million dollars than it would be to someone regularly earning an annual income of $60,000 with expenses." (*Id.* at 21-22).

Appellant's argument misses the mark.  Appellant's false oaths were material, because they "bear[ ] a relationship to [his] business transactions or his estate, . . . or concern[ ] the discovery of [his] assets, business dealings, and relations . . . , the existence and disposition of his property and debts and the like." *Steiker*, 380 F.2d at 768 (internal citation and quotation omitted).  Contrary to Appellant's argument regarding the value of the undisclosed assets (D.I. 8 at 14-24), "materiality is not defeated by the fact that the undisclosed property interests are determined to be without value." *U.S. Trustee v. Garland (In re Garland)*, 417 B.R. 805, 814-15 (B.A.P. 10th Cir. 2009); *see also Premier Capital, LLC v. Crawford (In re Crawford)*, 841 F.3d 1, 8 (1st Cir. 2016) ("Like many of our sister courts, we have rejected the notion that valuation determines materiality.").  It is also irrelevant that the Chapter 7 case trustee will not administer the undisclosed assets, as courts "need not analyze . . . whether creditors could recover from the asset[s]." *Crawford*, 841 F.3d at 9.  As the false oaths concerned Appellant's assets and income, they were material.

### 2.    Whether the False Oaths Were Knowingly Made

Appellant argues that his false oaths were not made knowingly and with the requisite intent under § 727(a)(4) because he was represented by counsel when he completed his schedules and statement of financial affairs (*see* D.I. 8 at 16-17 & 22-23).  However, nothing in the record before the Bankruptcy Court established that Appellant disclosed to his bankruptcy counsel either his actual 2014 MCA income or his interests in finpay.net and chriswolfington.com.  The mere fact that he had engaged counsel is irrelevant; as the UST correctly points out, advice of counsel is only a defense as to legal advice rendered by counsel that has been fully informed by the debtor of the relevant facts.  *See Zizza v. Harrington (In re Zizza)*, 875 F.3d 728, 732-33 (1st Cir. 2017) (rejecting advice of counsel defense in section 727(a)(4) proceeding where debtor did not advise counsel of pending lawsuits); *Darwin (Huck) Spaulding Living Trust v. Carl (In re Carl),* 517 B.R. 53, 70-71 (Bankr. N.D.N.Y. 2014) (rejecting advice of counsel defense in section 727(a)(4) proceeding where "vital factual information was withheld from Debtor's counsel").  The Bankruptcy Court did not err by not finding something Appellant never sought to prove.  *See Shoemaker v. United States Trustee (In re Shoemaker),* 2019 WL 2774265, at *15 (B.A.P. 9th Cir. July 1, 2019) (affirming denial of discharge under section 727(a)(2) and (a)(4) where there was no evidence that counsel had advised debtor not to disclose assets).

Appellant's false oaths were knowingly made, as he knew of the existence of the undisclosed domain names and his 2014 income from MCA yet made false statements to the contrary under penalty of perjury. *Steiker*, 380 F.2d at 767 (identifying the "well-settled principle[ ]" that "it is sufficient that the bankrupt knows what is true and, so knowing, willfully and intentionally swears to what is false"). The fact that Appellant was represented by counsel when he prepared his schedules and statement of financial affairs does not protect him from having his discharge denied.

### 3.   Fraudulent Intent

Making a false oath, rather than making accurate disclosures, warrants an inference that the false oath was made with the intent to defraud creditors. *See Steiker*, 380 F.2d at 767 (identifying the "well-settled principle[ ]" that "the making of a false oath is sufficient to justify an inference of an intent to defraud creditors"). In addition, "[r]eckless indifference to the truth is the functional equivalent of fraud for the purpose of denying a discharge to a debtor under 727(a)(4)." *Elian*, 659 F.3d at 106.

As to chriswolfington.com, Appellant argues this personal media website had no commercial value, and he thus had no motive to fraudulently conceal it. (D.I. 8 at 16). Appellant further argues that the Bankruptcy Court offered no explanation as to why Appellant's failure to list his personal website was fraudulent concealment, "as opposed to [Appellant] not realizing it would be

considered an asset or simply being a valueless asset that was inadvertently missed in attempting to list all of his assets where the logical and understandable focus of both [Appellant] and his legal counsel would be on assets [that] had some potential value." (*Id.* at 17).

With respect to finpay.net, Appellant argues that the UST devoted no time to establishing fraudulent intent, and the Bankruptcy Court "inexplicably" ruled that Appellant was obligated to list finpay.net as an asset on his schedules despite the Bankruptcy Court's determination that, in light of testimony regarding alleged interests in the website held by FinPay, LLC, "alienability rights" with respect to finpay.net were not apparent – "it is not obvious who has the right to order the site's sale." (A680). Appellant argues that "one cannot be found to have intentionally and fraudulently concealed an asset when one does not believe that they own the asset[,] especially when another party claims to own the asset ..." (*Id.* at 19). Appellant argues that the Bankruptcy Court offered no rationale in support of its finding that finpay.net was intentionally and fraudulently concealed.

Finally, with respect to the $15,000 discrepancy between the amount of "employment income" that Appellant reported as having received in 2014 from MCA and the amount of "all payments" that MCA reported having made to Appellant during 2014, Appellant argues that UST failed to meet his burden of establishing that Appellant acted with fraudulent intent in disclosing those sums. Appellant argues his testimony establishes that he did not have access to MCA's

records and that he estimated his prepetition earning for 2014 prior to being replaced by the Chapter 11 Trustee of MCA based on the salary he recalled earning of about $20,000 per month. Appellant testified that he believed the reason for the $15,000 discrepancy between the income reported on his schedules and the transfers reported in the MCA schedules was related to interest payments that MCA made to him in connection with loans he previously made to MCA. According to Appellant, this testimony does not support a finding of fraudulent intent or reckless indifference to his reporting obligations.

The Court disagrees. The Bankruptcy Court's finding that Appellant exhibited, at the very least, a "reckless indifference" to providing accurate information on his schedules and statement of financial affairs (A679), was supported by the evidence as a whole and was not clearly erroneous. Appellant testified that he did not disclose finpay.net because, although admitting to be the registrant of the domain name, he did not think he had an interest that had to be disclosed. Appellant similarly testified that he did not disclose chriswolfington.com because he thought it had no value. However, "debtors have an uncompromising duty to disclose whatever ownership interest they hold in property, and they must disclose everything, rather than make decisions about what they deem important enough for parties in interest to know." *Garland*, 417 B.R. at 815 (internal quotations and alteration omitted).

With regard to his 2014 income from MCA, Appellant did not disclose it regardless of whether it was salary income or interest income, both of which must be disclosed in the statement of financial affairs. (A125-A126, A135-A136). Although Appellant attributed his failure to accurately report his MCA income to the fact that he had no access to MCA's records (D.I. 8 at 20-22), that does not explain why he did not simply look up his own bank records — after all, he testified that he received payments from MCA by direct deposit (A625, Tr. at 105:2-3). Looking up his own bank records would have definitively answered how much MCA deposited into his account during January through March of 2014. Appellant's failure to take that simple step before preparing his statement of financial affairs and signing it under penalty of perjury evinces his reckless indifference to disclosing his 2014 income. As the Bankruptcy Court noted that, "[c]laims of ignorance or good faith error are further belied by the fact that [Appellant] had earlier been able to determine his 2014 MCA income" in preparing MCA's statement of financial affairs, which "manifests his reckless indifference to the truth, the kind that constituted fraudulent intent under § 727[(a)(4)]." (A679 (internal quotation omitted)).

In sum, Appellant made several false oaths in connection with his bankruptcy case because his schedules and initial statement of financial affairs did not disclose the finpay.net and chriswolfington.com domain names or his accurate 2014 MCA income. (D.I. 9 at 25-26). *See Elian*, 659 F. App'x at 106 (finding that

25

failure to disclose assets in schedules was a false oath); *Retz*, 606 F.3d at 1196 ("A false statement or an omission in the debtor's bankruptcy schedules or statement of financial affairs can constitute a false oath.") (internal quotation omitted).  The record supports, at the very least, "a pattern of extreme carelessness and indifference" (A670 at n. 29) which "is the functional equivalent of fraud for the purpose of denying a discharge to a debtor under § 727(a)(4)." *Elian*, 659 F.3d at 106.  Appellant has failed to show that the Bankruptcy Court based its decision on a clearly erroneous finding of fact, an erroneous legal conclusion, or an improper application of law to fact.  Therefore, the Court finds no basis to conclude that the Bankruptcy Court abused its discretion in denying Appellant's discharge under § 727(a)(4), which constitutes an additional basis to affirm the Judgment.

## C.    Testimony of Moore

Appellant argues that the Bankruptcy Court erred in limiting the testimony of Moore.  (*Id.* at 28-30).  As the UST correctly points out, reviewing courts grant considerable deference to the lower court's decision to exclude witness testimony. *See DCK TTEC, LLC v. Postel Indus., Inc.*, 602 F. App'x 895, 897-98 (3d Cir. 2015) (affirming lower court's decision to exclude testimony of a witness who was not disclosed during discovery).  (D.I. 9 at 34).  The testimony Appellant sought to elicit would purportedly have addressed FinPay, LLC, which was one of the businesses the UST argued Appellant should have disclosed on his schedule of assets and statement of financial affairs.  (A540-A546, Tr. at 20:24–26:9).

However, in responding to discovery, Appellant failed disclose Moore as an investor in FinPay, LLC (A538-A540, Tr. at 18:17–20:22).  Accordingly, the Bankruptcy Court determined that the UST "never had an opportunity to depose this witness because he had no idea he was related to your case" (A542, Tr. at 22:2-4).  Appellant ultimately agreed to limit his questioning of Moore to matters other than FinPay, LLC.  (A545-A546, Tr. at 25:25–26:9).  The Court agrees that the limitation of Moore's testimony did not adversely affect Appellant.  Indeed, Appellant prevailed below on the issue regarding which Appellant was not allowed to testify.  (A676 ("There is insufficient evidence to show that [Appellant] owned FinPay.")).  As for the matters on which he was allowed to testify, Moore provided testimony beneficial to Appellant regarding finpay.net.  (A538, Tr. at 18:9-19; A549-A551, Tr. at 29:25–31:8).  Appellant has failed to establish that Moore could have provided any additional testimony regarding finpay.net, or any testimony at all regarding chriswolfington.com or Appellant's 2014 income from MCA — which are the only parts of the Bankruptcy Court's decision relevant to this appeal.

Appellant has not shown that there is any testimony Moore could have presented, but was not allowed to present, that would have changed the result with regard to the issues on appeal.  The Court agrees with the UST that any error the Bankruptcy Court made in limiting his testimony was mere harmless error, not reversible error.  *See United States v. Evdokimow*, 726 F. App'x 889, 896 (3d Cir. 2018) (error in evidentiary ruling is harmless where it "did not prejudice the

defendant" because "it is highly probable that the error did not affect the result") (internal quotations omitted); *see also* Fed. R. Civ. P. 61 (made applicable by Fed. R. Bankr. P. 9005) ("At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights.").

### D.      Consideration of Appellant's Credibility in MCA Proceeding

Finally, Appellant argues that the Bankruptcy Court's consideration of its prior experience with him as a witness in MCA's Chapter 11 case was "improper" and evinced "bias" requiring the bankruptcy judge to recuse himself.  (D.I. 8 at 23 & 24-28).   Conversely, the UST argues that Appellant never objected to this evidence being considered by the Bankruptcy Court, so the issue has been forfeited and cannot be raised for the first time on appeal. *See Williams v. Borough of Highland Park*, 707 F. App'x 72, 76-77 (3d Cir. 2017) (holding that an issue not raised below is forfeited).

Appellant responds that the issue has not been waived.  Appellant argues that he "filed a request for a telephone conference on February 19, 2019 [D.I. 129] on the very issue of … the UST overreaching on the pretrial order including the Bankruptcy Court's determination on a different matter in the MCA bankruptcy case that Appellant had been found not to be credible." (*See* D.I. 12 at 16).

However, Appellant does not cite any "filed request" addressing this issue. (*See id.*)  The document cited by Appellant – Adv. D.I. 129 – is merely a notice advising that a telephonic status conference would be held on February 22, 2019

regarding the "proposed pre-trial order." No transcript of that telephonic status conference is available on the docket nor has one been provided to the Court. Appellant has failed to identify that transcript in the record on appeal (*see* D.I. 3) or cite any portion of the record where his objection to use of the April 24, 2014 transcript was raised.

The Bankruptcy Court determined that it could take judicial notice of the April 24, 2014 hearing transcript excerpt under Federal Rule of Evidence 201. (Adv. D.I. 132 at ¶ 19(c)). The Pre-Trial Order identified, under the category of "facts not subject to genuine dispute, or subject to dispute that the identified document is authentic and admissible," the following:

> l. The Court's finding in the MCA Chapter 11 (14-10603) case that [Appellant] was not a reliable witness: "I thought there was a lack of credibility of the witnesses. The testimony was inconsistent. It was, I believe, intentionally vague, and that applies to all of the witnesses, albeit, [Appellant] I found to be the least reliable."
>
> m. The Court's finding that in the MCA Chapter 11 case that [Appellant] ran MCA as his own company: "There was a disregard, I think, of accountability and really the company was really used as [Appellant]'s personal piggy bank."

(Adv. D.I. 132 at 6, ¶ 21 (l)-(m) (citing Adv. D.I. 104-19 & 104-22)). At the hearing, Appellant simply notes that the "Bankruptcy Court overruled Appellant's objection to use of this proper evidence." However, without supporting documents, the Court cannot conclude that this issue was raised by Appellant.

Even if the issue has not been waived, the UST argues, the Bankruptcy Court did not abuse its discretion or otherwise err by recalling its past experience with Appellant reliability as a witness in a related proceeding when considering whether to credit his testimony here.  The Bankruptcy Court had broad discretion in deciding the admissibility of evidence — including evidence regarding Appellant's reputation for truthfulness pursuant to Federal Rule of Evidence 608(a) — and, on appeal, a reviewing court "will not disturb a trial court's exercise of discretion unless no reasonable person would adopt the [trial] court's view." *Stecyk v. Bell Helicopter Textron, Inc.*, 295 F.3d 408, 412 (3d Cir. 2002).

The Bankruptcy Court's consideration of its past experience with Appellant as a witness was not unreasonable.  In making its determination under § 727(a)(2)(B), the Bankruptcy Court was allowed to consider Appellant's pre- and post-petition pattern of behavior.  *See In re Zhang*, 463 B.R. 66, 85-86 (Bankr. S.D. Ohio 2012) (reviewing debtor's prepetition actions to determine requisite intent in denying discharge under § 727(a)(2)(B)).  The Bankruptcy Court did not abuse its discretion or otherwise err by considering all of the circumstances that exhibit Appellant's pattern of behavior.  The Bankruptcy Court not only observed Appellant's testimony in MCA's Chapter 11 case, it observed his testimony here.  "When findings are based on determinations regarding the credibility of witnesses, [Fed. R. Civ. P.] 52(a) demands even greater deference to the trial court's findings; for only the trial judge can be aware of the variations in demeanor and tone of

voice that bear so heavily on the listener's understanding of and belief in what is said. " *Anderson v. City of Bessemer City*, 470 U.S. at 575.

Finally, the Court finds no basis for the Bankruptcy Court to recuse itself due to bias.  "The judge who presides at a trial may, upon completion of the evidence, be exceedingly ill disposed toward the defendant, who has been shown to be a thoroughly reprehensible person.  But the judge is not thereby recusable for bias or prejudice, since his knowledge and the opinion it produced were properly and necessarily acquired in the course of the proceedings[.]" *Liteky v. United States*, 510 U.S. 540, 550-51 (1994); *see also id.* at 551 ("Also not subject to deprecatory characterization as 'bias' or 'prejudice' are opinions held by judges as result of what they learned in earlier proceedings."); *In re Shusterman*, 394 F. App'x 888, 890 (3d Cir. 2010) (recusal not required even though judge, at plea withdrawal hearing, referred to defendant as "one of the most specially-talented liars that I've ever met in my life.").

## V.    CONCLUSION

In support of his objection to discharge, the UST established a prima facie case under §§ 727(a)(2) and (a)(4), which Appellant failed to rebut.  Appellant has failed to show that the Bankruptcy Court based its opinion on a clearly erroneous finding of fact, an erroneous legal conclusion, or an improper application of law to fact.  Therefore, the Court finds no basis to conclude that the Bankruptcy Court abused its discretion in denying Appellant's discharge under §§ 727(a)(2) and (4).

The Court will issue a separate Order consistent with this Memorandum Opinion.